UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GIORGIO MCKINNEY,<br><br>　　　　　　　　Defendant. | CASE NO. CR18-096RSM<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

## I. INTRODUCTION

This matter comes before the Court on Defendant Giorgio McKinney's Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1). Dkt. #72. Defendant requests that the Court reduce his sentence due to the global COVID-19 pandemic and the risks it poses to him as a result of his Post Traumatic Stress Disorder ("PTSD") and sleep disorder, as well as his children's need for him to be a substitute care giver in the event their mother contracts COVID-19. Plaintiff United States of America ("the Government") opposes Defendant's motion. Dkt. #75. Defendant has not filed a Reply. The Court finds oral argument unnecessary to rule on this motion. LCrR 12(b)(12). Having considered the Motion, the Government's Response, and the remainder of the record, the Court DENIES Mr. McKinney's motion for compassionate release.

//

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 1

## I.  BACKGROUND

Mr. McKinney is a 35-year-old inmate confined at the Federal Correctional Institute in Sheridan, Oregon ("FCI Sheridan"). On January 27, 2018, Seattle police conducted a search of Defendant's car in the process of arresting one of its passengers. *See* Dkt. #60. Police found a 9mm firearm in the center console, which Defendant admitted was his. On January 16, 2019, Defendant pleaded guilty to one count of felon in possession of firearm, 18 U.S.C. § 922(g)(1). Dkt. #45. On November 1, 2019 the Court sentenced Mr. McKinney to 36 months in custody and 36 months of supervised release. Dkt. #67. Defendant's projected release date is May 1, 2022.

Over the past months, public understanding of the COVID-19 virus and its corresponding risks to inmates and staff at Bureau of Prison ("BOP") facilities has continued to expand. The U.S. Centers for Disease Control and Prevention ("CDC") has advised that certain populations are at heightened risk of severe complications and/or death if they contract COVID-19. *See* U.S. Ctrs. for Disease Control and Prevention, *Coronavirus Disease 2019-COVID*, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Sept. 11, 2020) ("CDC Guidelines").[1] This includes individuals over the age of 65, those in nursing homes or long-term care facilities, and those with "certain underlying medical conditions." *Id.* Particularly concerning are chronic lung diseases such as chronic obstructive pulmonary disease, serious heart conditions, obesity, Type 2 diabetes, chronic kidney disease, cancer, sickle cell disease, and weakened immune system due to a solid

---

[1] Pursuant to Fed. R. Evid. 201(c)(1), the Court takes judicial notice *sua sponte* of public records related to the COVID-19 health crisis, including documents available through government agency websites. *Gustavson v. Wrigley Sales Co.*, No. 12-CV-01861-LHK, 2014 WL 60197, at *3 (N.D. Cal. Jan. 7, 2014).

organ transplant.[2] The CDC revised its guidance on July 17, 2020 to reflect that certain underlying conditions such as moderate-to-severe asthma and high blood pressure "*might* increase risk to better reflect the quality of available data currently." *Id.* (emphasis in original).

In response to public health officials' warnings about the spread of COVID-19 and the risk of severe complications in certain populations, the U.S. Attorney General has issued guidance to the Director of the BOP recommending a reduction in prison populations. *Memorandum from the Attorney General to the Director of Bureau Prisons*, (March 26, 2020), https://www.justice.gov/file/1262731/download. The Attorney General advises that the reduction should be accomplished by transferring non-violent, vulnerable, and elderly inmates posing a minimal likelihood of recidivism to home confinement. *Id.* At FCI Sheridan, there are currently 19 inmates with pending tests, 8 inmates with positive tests, and 5 inmates designated as "recovered." *See* Federal Bureau of Prisons, Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited October 6, 2020).

On June 2, 2020, Defendant submitted an administrative request for release due to COVID-19. *See* Dkt. #72-1. Defendant did not receive a response and filed a Motion for Compassionate Release with this Court on September 27, 2020. Dkt. #72 at 5.

**II.     DISCUSSION**

**A. Legal Standard**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations

---

[2] The CDC also identifies other conditions causing a weakened immune system that *may* increase one's risk for severe illness, including blood or bone marrow transplant, HIV, use of corticosteroids, or use of other immune weakening medicines. CDC Guidelines, *supra*.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 3

omitted). Those limited circumstances are governed by 18 U.S.C. § 3582(c). Previously, district courts could "reduce the term of imprisonment" only "upon motion of the Director of the Bureau of Prisons." However, amendments contained in the First Step Act of 2018, effective on December 21, 2018, further allowed district courts to act "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . . ." 18 U.S.C. § 3582(c)(1)(A). Since more than thirty days has lapsed since his administrative request, parties agree that Mr. McKinney has satisfied his administrative remedies. *See* Dkt. #75 at 9.

No matter how the issue comes before the Court, the Court must find that "extraordinary and compelling reasons warrant" a sentence reduction and that a "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*[3] The Sentencing Commission's policy statements specify that a sentence should be reduced only where a district court concludes, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "[e]xtraordinary and compelling reasons warrant the reduction," and that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." United States Sentencing Guidelines ("USSG") § 1B1.13. Given that Mr. McKinney is 35 years old, only sections (1)(A), (2), and (3) of the Sentencing Commission's policy statement are relevant to his motion. Thus, under the policy statement, Mr. McKinney is entitled to relief if he demonstrates that (1) extraordinary and compelling reasons warrant a sentence reduction, (2) he is

---

[3] A reduction may also be permitted because of the defendant's old age, provided "that the defendant is not a danger to the safety of any other person or the community" and that the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(ii). Defendant does not seek relief on this basis.

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 4

not a danger to the safety of others or the community, and (3) any requested reduction is consistent with the policy statement. *See* USSG § 1B1.13(1)(A), (2), (3).

**B. Extraordinary and Compelling Circumstances**

Defendant bears the burden of establishing that extraordinary and compelling reasons exist that justify compassionate release. *Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *7 (W.D. Wash. Apr. 10, 2020). Mr. McKinney claims that he is entitled due release due to (1) his medical conditions that increase his likelihood of severe illness from COVID-19; and (2) family circumstances related to his wife's high likelihood of contracting COVID-19.

      i. Medical Condition

The Sentencing Commission provides guidance on circumstances that may support a finding of "extraordinary and compelling reasons." In relevant part, the guidance states:

> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> . . .
>
> (D) Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivision (A) through (C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 5

USSG § 1B1.13 cmt. n.1(A).[4]

Because USSG § 1B1.13 has not been updated since the passage of the First Step Act, district courts nationwide are split on the issue of whether the Commission's list of "extraordinary and compelling reasons" is exclusive and binding on courts. *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows the growing number of district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in USSG § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release.") (internal quotation marks omitted)). Consistent with the reasoning in *Rodriguez*, several courts in this district have concluded that "the comments to USSG § 1B1.13 do not constrain the Court in evaluating whether the grounds for release articulated by defendant are 'extraordinary and compelling,' but they do provide helpful guidance." *United States v. Powers*, No. CR15-166 TSZ, 2020 WL 3605748, at *1 (W.D. Wash. July 2, 2020); *see also United States v. Locke*, No. CR18-0132 RAJ, 2020 WL 3101016, *4 (W.D. Wash. June 11, 2020) ("[T]his Court agrees with the position taken by numerous courts that the 'old policy statement provides helpful guidance, [but] . . . does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reason' warrant a sentence reduction under § 3852(c)(1)(A)."); and *United States v. Grubbs*, No. CR 16-228TSZ, 2020 WL 3839619, at *1 & *2 n.2 (W.D. Wash. July 8, 2020). The Court reaches the same conclusion here that the comments to USSG § 1B1.13 are not exclusive, but nevertheless provide useful guidance.

---

[4] The application note also provides that a finding of "extraordinary and compelling reasons" may be premised on the age of the defendant or the family circumstances of the defendant. USSG 1B1.13 cmt. n.1(B)–(C).

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 6

Over the past several months, faced with the rapid spread of COVID-19 through the country's prison systems, many courts have determined that the USSG's "medical condition" criteria are not well-suited to addressing the risk of serious illness or death from COVID-19. As a result, courts in this district have considered one or more of the following factors when evaluating a compassionate release request based on the threat COVID-19: (i) whether the inmate is at higher risk because of his or her age and/or race; (ii) whether the inmate has one or more, medically-documented, chronic health conditions that render him or her more vulnerable to COVID-19; (iii) the fatality rate for individuals with similar health conditions as compared with the overall fatality rate for COVID-19; (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease; and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19. *Powers*, 2020 WL 3605748, at *2 (W.D. Wash. July 2, 2020) (collecting cases). Given the "catch-all" provision of the Commission's application notes, *see* USSG § 1B1.13, cmt. n.1(D), as well as the non-binding status of the comments to USSG § 1B1.13, the Court has discretion to consider the above factors. *Id.*

Mr. McKinney argues that the effects of PTSD and related sleep disorders expose him to heightened risk of severe illness from COVID-19. Dkt. #72 at 3. Although the CDC identifies various conditions and treatments that may compromise one's immune system and therefore increase susceptibility to COVID-19, it does not reference PTSD and/or sleep disorders as one of these factors. *See* CDC Guidelines, *supra* (citing immunocompromised state due to organ, blood, or bone marrow transplants, HIV, use of corticosteroids, or use of other immune weakening medicines). Defendant also provides several articles describing the link between PTSD, sleep deprivation, and weakened immune systems. *See* Dkts. #72-4, #72-5, #72-6. Of these articles,

only one addresses the link between COVID-19 and PTSD. *See* Dkt. #72-4 at 15-17 (Nat'l Ctr. for PTSD, *Effects of the Coronavirus (COVID-19) Pandemic on PTSD*, https://www.ptsd.va.gov/covid/COVID _effects_ptsd.asp (last updated June 3, 2020). However, this article only describes how the stress and anxiety of the COVID-19 pandemic exacerbate PTSD symptoms. *See id.* While these materials demonstrate a link between anxiety and stress on a person's immune system, they are insufficient to demonstrate that Mr. McKinney's PTSD or sleep disorders render him immunosuppressed to the extent that he is at risk of severe illness from COVID-19.

For these reasons, the Court finds that on the current record, it cannot conclude that Mr. McKinney's medical conditions constitute extraordinary and compelling circumstances for compassionate release.

ii. <u>Family Circumstances</u>

Mr. McKinney also claims that his family circumstances merit compassionate release due to the potential incapacitation of Jonisha Cloy, who is the mother and caregiver for two of Defendant's minor children. Dkt. #72 at 4. The Sentencing Commission's application notes provide that "extraordinary and compelling reasons" for a sentence reduction exist due to: "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children . . . ." USSG § 1B1.13 cmt. n.1(C). Defendant has failed to demonstrate that this condition is satisfied here.

Because the First Step Act was enacted as recently as December 2018, there is sparse case law addressing the standards a district court should employ when reviewing an inmate's request for compassionate release due to "family circumstances." For that reason, courts have looked to a Program Statement issued by BOP for guidance in reviewing requests based on the incapacitation

of a spouse and/or the incapacitation of the family member caregiver. *See, e.g.*, *United States v. Bolden*, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020); *United States v. Collins*, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"); *see also United States v. Strain*, No. 3:97-CR-00004-TMB, 2020 WL 1977114, at *4, n.49 (D. Alaska Apr. 24, 2020); *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019)).

The Program Statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10. The Program Statement also provides for incapacitation as a result of a "severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair." *Id.* When evaluating requests based on incapacitation of the caregiver to a defendant's minor child, "incapacitation" is defined as "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." *Id.* at 7. The guidance states that information and documentation must be provided showing the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. *Id.* at 7-8.

Here, Defendant does not allege that Ms. Cloy is incapacitated. Rather, he argues that she is likely to contract COVID-19 given her position as a medical assistant, and that illness from

ORDER DENYING DEFENDANT'S MOTION
FOR COMPASSIONATE RELEASE - 9

COVID-19 would be incapacitating. *See* Dkt. #72 at 4. Defendant offers no authority providing for compassionate release based on the possible future incapacitation of a caregiver, and the Court is not aware of any. Based on the current record, Defendant has failed to demonstrate that Ms. Cloy is incapacitated to the extent that she is incapable of caring for Defendant's children. Accordingly, having considered the facts presented in light of BOP's guidance, the Court concludes that Defendant has not demonstrated extraordinary and compelling family circumstances warranting a reduction in his sentence.

Having determined that Defendant has not made the requisite showing of "extraordinary and compelling reasons" for compassionate release, the Court need not analyze whether a reduction in Mr. McKinney's sentence would be consistent with the factors set forth in 18 U.S.C. § 3553(a) and the applicable policy statement issued by the United States Sentencing Commission. *See* 18 U.S.C. § 3582(c)(1)(A).

### III.    CONCLUSION

For the reasons set forth above, the Court ORDERS that Mr. McKinney's Motion for Compassionate Release, Dkt. #72, is DENIED. The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 15th day of October, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE